JOSEPH T. MCNALLY
Acting United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER C. KENDALL (Cal. Bar. No. 274365)
JEHAN KIM (Cal. Bar No. 320584)
Assistant United States Attorneys
Deputy Chiefs, International Narcotics,
Money Laundering, and Racketeering Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-2576/0319
Facsimile: (213) 894-0142
E-mail: christopher.kendall@usdoj.gov
jehan.kim@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>OSCAR AHUMADA LEYVA,<br><br>Defendant. | No. CR 23-653-DSF-2<br><br><u>PLEA AGREEMENT FOR DEFENDANT OSCAR AHUMADA LEYVA</u> |

1. This constitutes the plea agreement between OSCAR AHUMADA LEYVA ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.

<u>DEFENDANT'S OBLIGATIONS</u>

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts two and fifteen of the Indictment in United States v. Victor Daniel Meza Ortiz, et al., CR No. 23-653-DSF, which charges defendant with Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h. Agree to and not oppose the imposition of the following condition of probation or supervised release: defendant shall consent to search at any time of the day or night, with or without a search warrant, warrant of arrest, probable cause, or reasonable suspicion by any probation officer or law enforcement

officer -- and waives any right to object to any search and seizure -- of his person, residence, vehicle, digital devices and their peripheral equipment, and any other real or personal property under defendant's control.

3. Defendant further agrees:

a. To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty (collectively, the "Forfeitable Assets").

b. To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c. To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d. Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets. If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f. Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g. To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h. To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i. That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

THE USAO'S OBLIGATIONS

4. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

c. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

5. Defendant understands that for defendant to be guilty of the crime charged in count two, that is, Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), the following must be true: (1) there was an agreement between two or more persons to distribute

and to possess with intent to distribute controlled substances; and (2) defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

6. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentences set forth below, the government must prove beyond a reasonable doubt that, over the course of defendant's membership in the conspiracy, defendant conspired to distribute and possess with intent to distribute: at least 400 grams of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl"), at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, at least 50 grams of methamphetamine, or at least one kilogram of a mixture and substance containing a detectable amount of heroin. Defendant admits that defendant, in fact, conspired to distribute and possess with intent to distribute at least 400 grams of fentanyl, at least 50 grams of methamphetamine, and at least one kilogram of a mixture and substance containing a detectable amount of heroin.

7. Defendant understands that for defendant to be guilty of the crime charged in count fifteen, that is, Conspiracy to Launder Monetary Instruments, in violation of 18 U.S.C. § 1956(h), the following must be true: (1) there was an agreement between two or more persons to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), that is, to (a) conduct or intended to conduct a financial transaction involving property that represented the proceeds of drug trafficking; (b) knowing that the property represented the proceeds of some form of unlawful activity; and acting with the intent to promote the carrying on of drug

trafficking; and (2) defendant became a member of the conspiracy knowing of its object and intending to help accomplish it.

PENALTIES

8. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), as charged in count two of the Indictment, pursuant to 21 U.S.C. § 841(b)(1)(A) is: life imprisonment; a lifetime period of supervised release; a fine of $10 million or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9. Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), as charged in count two of the Indictment, pursuant to 21 U.S.C. § 841(b)(1)(A), is: ten years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

10. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(h) is: twenty years' imprisonment; a three-year period of supervised release; a fine of $500,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: life imprisonment; a lifetime period of supervised release; a fine of $10,500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $200.

12. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

13. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

14. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

15. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States

citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

16. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

> Beginning on a date unknown and continuing to on or about February 8, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant knowingly and intentionally agreed with co-conspirators to distribute and possess with intent to distribute controlled substances. Intending to help accomplish the purpose of the conspiracy, defendant knowingly conspired to distribute

at least 400 grams of fentanyl, a Schedule II narcotic drug controlled substance, at least 50 grams of methamphetamine, a Schedule II controlled substance, and at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I narcotic drug controlled substance.

Specifically, defendant is the Mexico-based owner of Carin Trucking, and manages the transportation of controlled substances from Mexico into the United States. In so doing, defendant employs semi-truck drivers to deliver scrap metal from Mexico to a yard in Los Angeles, as well as to cross the border and to deliver fentanyl or heroin, carefully packed in scrap metal fire extinguishers and hidden in legitimate scrap metal loads, to various couriers in Los Angeles. The truck drivers are paid $900 for every "canister" they bring across. Defendant arranged for the transportation of these drugs on behalf of a Mexico-based source of supply, Victor Daniel Meza Ortiz.

In furtherance of this conspiracy, defendant and his co-conspirators committed at least the following overt acts:

On March 17, 2022, in Los Angeles County, Francisco Fabian TORRES Gaona driving a semi-truck registered to defendant's company, Carin Trucking, delivered a bag to Domingo Ruiz Soto. TORRES had received this bag from Juan Carlos MORENO Flores, another truck driver for Carin Trucking. The bag contained three scrap metal fire extinguishers filled with approximately 4,362 grams of fentanyl pills and approximately 2,023 grams of heroin, and was delivered at defendant's direction.

On July 5, 2022, in Los Angeles County, TORRES, driving a semi-truck registered to Carin Trucking, delivered a bag to Fernando SALGADO. The bag contained two scrap metal fire extinguishers filled with 240 grams of methamphetamine and 2,309 grams of blue fentanyl-laced pills with M30 markings, and was delivered at defendant's direction.

On July 6, 2022, in Los Angeles County, MORENO driving a Carin Trucking semi-truck, delivered a bag to Jose Luis Rodriguez CHAVARIN. The bag contained one scrap metal fire extinguisher filled with approximately 1,983.7 grams of heroin and 6.45 grams of fentanyl, and was delivered at defendant's direction.

On July 22, 2022, in Los Angeles County, MORENO, driving a semi-truck registered to Carin Trucking, delivered a bag to Rocio Guadalupe ACEVEDO Tonche. The bag contained one scrap metal fire extinguisher filled with approximately 1,955 grams of powdered fentanyl, and was delivered at defendant's direction.

> On August 31, 2022, in Los Angeles County, MORENO, while driving a semi-truck registered to Carin Trucking, delivered a weighted bag to Toniel BAEZ-DUARTE. The bag contained four scrap metal fire extinguishers filled with approximately 7,971 grams of heroin, and was delivered at defendant's direction.
>
> On October 21, 2022, MORENO, driving a semi-truck registered to Carin Trucking, crossed into the United States from Mexico with a fire extinguisher filled with 2,198 grams of fentanyl pills. MORENO was transporting the fentanyl at defendant's direction.

Beginning on a date unknown and continuing to on or about February 8, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant conspired with others to launder cash that defendant knew involved the proceeds of drug trafficking. Defendant became a member of the conspiracy knowing of its object and intending to help accomplish it. The members of the conspiracy agreed to conduct financial transactions involving property that represented the proceeds of drug trafficking, knowing that the property represented the proceeds of some form of unlawful activity, and acting with the intent to promote the carrying on of drug trafficking. The conspiracy caused the laundering of at least $463,443.83 from January 2020 to February 2023 through a bank account controlled by defendant. Additionally, defendant arranged to have his co-conspirator truck drivers receive drug proceeds in the United States, which they would then transport back to Mexico.

In furtherance of this conspiracy, defendant committed at least the following overt act:

> On February 2, 2022, defendant caused the withdrawal of $25,000 of cash from a Wells Fargo bank account to pay his co-conspirator truck drivers for their ongoing participation in the drug trafficking conspiracy.

## SENTENCING FACTORS

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and the maximum set by statute for the crimes of conviction.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level (more than 30,000 KG Converted Drug Weight): | 36 | U.S.S.G. §§ 2S1.1(a)(1), 2D1.1(a)(5), (c)(2) |
| Convicted Under 18 U.S.C. § 1956: | +2 | U.S.S.G. § 2S1.1(b)(2)(B) |
| Manager of Others (Five or more participants) | +3 | U.S.S.G. § 3B1.1(b) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

a. The right to persist in a plea of not guilty.

b. The right to a speedy and public trial by jury.

c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e. The right to confront and cross-examine witnesses against defendant.

f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTIONS

22. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant

are pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

23. Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the Sentencing Guidelines range corresponding to an offense level of 38 and the criminal history category calculated by the Court, subject to any applicable mandatory minimum, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (e) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

24. Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

25. The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the Sentencing Guidelines range corresponding to an offense level of 38 and the criminal history category calculated by the Court, subject to any applicable mandatory minimum, the USAO gives up its right to appeal any portion of the sentence.

RESULT OF WITHDRAWAL OF GUILTY PLEAS

26. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

27. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

28. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

29. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

30. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any

speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

31. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

32. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it

chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

33. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and the statutory maximum.

NO ADDITIONAL AGREEMENTS

34. Defendant understands that, except as set forth herein and in any contemporaneous agreement or addendum signed by all parties, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

35. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

JOSEPH T. MCNALLY
Acting United States Attorney

| | |
|---|---|
| *Christopher C. Kendall* | April 8, 2025 |
| CHRISTOPHER C. KENDALL<br>JEHAN KIM<br>Assistant United States Attorneys | Date |
| | 3-28-2025 |
| OSCAR AHUMADA LEYVA<br>Defendant | Date |
| | 3-28-2025 |
| ~~[illegible]~~ Alex Kessel<br>Attorney for Defendant OSCAR AHUMADA LEYVA | Date |

CERTIFICATION OF DEFENDANT

This agreement has been read to me in Spanish, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of

any kind have been made to me other than those contained in this agreement or in an agreement signed by all parties or on the record in court. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

3-28-2025

OSCAR AHUMADA LEYVA
Defendant

Date

CERTIFICATION OF INTERPRETER

I, [signature], am fluent in the written and spoken English and Spanish languages. I accurately translated this entire agreement from English into Spanish to defendant OSCAR AHUMADA LEYVA on this date.

4-2-2025

INTERPRETER

Date

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am OSCAR AHUMADA LEYVA's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement or in an agreement signed by all parties or on the record

in court; no one has threatened or forced my client in any way to enter into this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

ALEX KESSEL
Attorney for Defendant OSCAR AHUMADA LEYVA

5-28-2025
Date